IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NOLAN KINARD FLOYD, SR., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. DKC-22-2090 |
| WARDEN JEFFREY NINES, et al., | * | |
| Defendants. | * | |

***

## MEMORANDUM OPINION

As directed in the Court's Order issued October 16, 2023, Defendants Ronald Stotler, Cheryl Lindner, and Warden Jeffrey Nines filed a response seeking to dismiss Plaintiff Nolan Kinard Floyd, Sr.'s remaining claim for damages for violation of his due process rights.[1] ECF No. 25. Alternatively, Defendants seek summary judgment in their favor. *Id.* Mr. Floyd was notified of his right to file a response in opposition but, to date, has failed to do so. *See* ECF No. 26. Having reviewed the submitted materials, the court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons that follow, Defendants' motion will be granted.

**I.   Background**

The court summarized Mr. Floyd's allegations and the evidence submitted by Defendants in the memorandum issued October 16, 2023, as follows:

> Mr. Floyd alleges that on June 1, 2022, the sum of $1,656.08 was withdrawn from his inmate account at NBCI. ECF No. 1 at 3. Mr. Floyd had contacted the NBCI Finance Department on May 24, 2022, while housed at Baltimore County Detention Center ("BCDC"), regarding these funds, at which time Cheryl Lindner, the Finance Manager, informed him that NBCI could only release $500 to him at one time and the remaining balance would be mailed to him at BCDC. *Id.* Mr. Floyd alleges that the funds were never mailed to him in violation of his due process rights under the Fifth and Fourteenth Amendments. *Id.*

---

[1] The Order also dismissed the Complaint as moot to the extent that Mr. Floyd sought injunctive relief or compensatory damages in the amount of $1,656.08. ECF Nos. 19, 20.

> …
>
> Ms. Lindner attests that in April 2022, Mr. Floyd had $2,156.08 in his NBCI inmate account.  ECF No. 13-1 at ¶ 3.  Mr. Floyd was transferred from NBCI to BCDC on April 5, 2022.  *Id.* at ¶ 4.  Ms. Lindner avers that the Department of Corrections policy states that if an inmate's account balance exceeds $500, Inmate Accounts may only issue a check up to $500, the remaining balance must be issued by the Comptroller of Maryland/Treasurer's Office.  *Id.*  On June 1, 2022, Ms. Lindner processed a transaction for the remaining balance to be issued by the Comptroller in the amount of $1,656.08.  *Id.* at ¶ 5.  However, the check was returned from BCDC to the Comptroller.  *Id.*; *see* ECF No. 13-2.  When Mr. Floyd returned to NBCI on July 22, 2022, Ms. Lindner submitted a request for a new check to be issued to Mr. Floyd.  *Id.* at ¶ 6.  The funds were received and posted to Mr. Floyd's account on February 2, 2023.  *Id.*

ECF No. 19 at 2-3.

Defendants now submit additional materials in support of the instant Motion.  In response to an email request from BCDC, Ms. Lindner attests that pursuant to the above-referenced policy, she issued a check for $500 to Mr. Floyd at BCDC on May 25, 2022.  ECF No. 25-2 at ¶¶ 5, 6; *see* ECF No. 25-4.  When the additional $1,656.08 were returned undeliverable, Ms. Lindner avers the reason for its return was unclear.  ECF No. 25-2 at ¶ 8.  Ms. Lindner notified BCDC that the funds had been returned via email on July 6, 2022.  *Id.* at ¶ 9.  The Comptroller also asked the Division of Finance for the Department of Public Safety and Correctional Services to confirm Mr. Floyd's location so that the check could be resent.  *Id.*  Following Mr. Floyd's transfer to NBCI on August 23, 2022, Ms. Lindner submitted forms to the Comptroller to have the funds resent to Mr. Floyd at NBCI.  *Id.* at ¶ 11; *see* ECF No. 25-6.  The check was issued on January 27, 2023.  ECF No. 25-2 at ¶ 13; *see* ECF No. 25-7.

## II.   Standard of Review

In reviewing the complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.

*Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained that a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Defendants alternatively seek summary judgment in their favor. Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The

Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### III. Discussion

Defendants argue that Mr. Floyd's allegation that they failed to return money timely to his inmate account fails to state a claim and they are otherwise entitled to qualified immunity. ECF No. 25. Mr. Floyd has not responded to the Motion.

A negligent deprivation of property is not actionable under 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("…the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property.") (emphasis in original)). The *Daniels* Court, considering a damages claim for injuries sustained

4

when a prisoner slipped on a pillow left in a stairwell, concluded that the official's actions "in leaving a pillow on the prison stairs, or mislaying an inmate's property, are…[f]ar from an abuse of power[;] lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person." *Id.* at 332.  The Supreme Court concluded that "[t]o hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principles of due process of law." *Id.*

Mr. Floyd's allegation that Defendants failed to return his funds timely to his inmate account, like that raised in *Daniels*, does not rise to that of a constitutional violation.  As noted in the court's previous Memorandum, since instituting this action, the withdrawn funds of $1,656.08 have been returned to Mr. Floyd.  Thus, even having liberally construed Mr. Floyd's Complaint, he, at most, complains of a mere delay in return of the funds withdrawn when he was transferred between institutions.  As the *Daniels* Court noted, a mislaying of property is not an abuse of power and does not rise to the level of a violation of the Fourteenth Amendment to the Constitution.  474 U.S. at 332.  Thus, as Mr. Floyd pleads nothing more than a possible negligent, temporary deprivation of property, his Complaint must be dismissed.  *See Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017) (finding "insofar as plaintiffs' claims sound in generic negligence, the Due Process Clause 'is simply not implicated' by acts of official carelessness.") (quoting *Daniels*, 474 U.S. at 328).

By separate Order that follows, Defendants' Motion to Dismiss will be granted and the remainder of the Complaint, containing Mr. Floyd's damages claim, will be dismissed.

April 9, 2024                                                              /s/
                                                          DEBORAH K. CHASANOW
                                                          United States District Judge